UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| AIG SPECIALTY INSURANCE COMPANY, )<br>)<br>PLAINTIFF, )<br>)<br>)<br>VS. )<br>) CASE NO.<br>ACCELLION, INC. )<br>) **JURY TRIAL DEMANDED**<br>DEFENDANT. )<br>)<br>)<br>) | |

**COMPLAINT**

Plaintiff, AIG Specialty Insurance Company ("ASIC"), as subrogee and assignee, complains of Accellion, Inc. ("Accellion") and in support thereof, alleges as follows:

**INTRODUCTION**

1. Accellion is a software company that provides file transfer software and services to customers. Accellion markets its company and software as having "protected more than 25 million end users at more than 3,000 global corporations and government agencies[1]."

2. Accellion developed and sold software called File Transfer Appliance ("FTA") to companies and marketed FTA as a secure method of transferring files. Despite declaring FTA near "end-of-life", Accellion continued to provide, support, and maintain its customers' FTA software.

3. On December 16, 2020 and January 20, 2021, threat actors targeted FTA as a means

---

[1] *See* https://www.kiteworks.com/company/security-updates/accellion-provides-update-to-recent-fta-security-incident/ (last visited Jan. 18, 2022).

1

of committing an unauthorized access and theft of confidential information.

4. The University of Miami ("Insured") used Accellion's FTA software to transfer large files including confidential information and protected health information. During the Accellion breach, Insured's confidential information was accessed and stolen by threat actors. As a result, Insured incurred damages to remediate the effects of the breach and loss of confidential information, including protected health information.

## THE PARTIES, JURISDICTION, AND VENUE

5. ASIC is incorporated under Illinois law and maintains its principal place of business in New York.

6. Accellion is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in California.

7. This Court has diversity jurisdiction pursuant 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 (exclusive of interest and costs) and the matter involves a dispute between citizens of different states, as ASIC is a citizen of Illinois and New York, and Accellion is a citizen of Delaware and California.

8. Venue is proper in this district under 28 U.S.C. §§ 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

9. This Court has personal jurisdiction over Accellion because upon information and belief, Accellion provided software products and services to customers in Florida and contracted to pursue any disputes arising out of the parties' License Agreement to the jurisdiction of Florida.

## FACTS COMMON TO ALL ALLEGATIONS

10. On or around December 16, 2020, threat actors targeted FTA as a means of accessing confidential information.[2] From December 16, 2020 to December 20, 2020, Accellion reportedly investigated and identified vulnerabilities within FTA.[3] On December 20, 2020, Accellion purportedly released a patch to remediate the vulnerabilities to some customers.[4] Despite Accellion's software patch, threat actors had already exploited the vulnerabilities, thereby allowing them to exfilitrate confidential information.

11. On or about January 12, 2021, Accellion issued a press release acknowledging that it identified a vulnerability in the FTA in December 2020. As explained in the press release, Accellion represented that "In mid-December, Accellion was made aware of a P0 vulnerability in its legacy File Transfer Appliance (FTA) software." Accellion's January 12, 2021 press release represented that "Accellion resolved the vulnerability and released a patch within 72 hours to the less than 50 customers affected."

12. On or about January 20, 2021, threat actors again breached the FTA software.[5]

13. On February 1, 2021, Accellion published a press release entitled "All Known Vulnerabilities Closed and Migration Efforts Continue."[6] The February 1, 2021 press release again acknowledged that: "In mid-December, Accellion was made aware of a zero-day vulnerability in its legacy FTA software. Accellion released a fix within 72 hours." The February 1, 2021 press

---

[2] *See* https://www.kiteworks.com/sites/default/files/trust-center/acclleion-fta-attack-mandiant-report-full.pdf (last visited Jan. 18, 2022).
[3] *See* https://www.kiteworks.com/sites/default/files/trust-center/acclleion-fta-attack-mandiant-report-full.pdf (last visited Jan. 18, 2022).
[4] *See* https://www.kiteworks.com/sites/default/files/trust-center/acclleion-fta-attack-mandiant-report-full.pdf (last visited Jan. 18, 2022).
[5] *See* https://www.kiteworks.com/sites/default/files/trust-center/acclleion-fta-attack-mandiant-report-full.pdf (last visited Jan. 18, 2022).
[6] *See* https://www.kiteworks.com/company/security-updates/accellion-provides-update-to-recent-fta-security-incident/ (last visited Jan. 18, 2022).

release, however, acknowledged that Accellion identified additional vulnerabilities: "This initial incident was the beginning of a concerted cyberattack on the Accellion FTA product that continued into January 2021. Accellion identified additional exploits in the ensuing weeks and rapidly developed and released patches to close each vulnerability." These patches did not protect confidential information as cyber criminals had already exploited the vulnerabilities.

14. Accellion engaged Mandiant, Inc. ("Mandiant"), a cybersecurity firm, to conduct a security assessment of its FTA. On February 4, 2021, Mandiant began its security assessment, which identified two new vulnerabilities, and on February 28, 2021, Mandiant concluded its security assessment.

15. On February 22, 2021, Mandiant issued an initial report titled "Threat Research" reflecting Mandiant's investigation and analysis of vulnerabilities in Accellion's FTA. Mandiant's initial reporting concluded that "[s]tarting in mid-December 2020, malicious actors that Mandiant tracks as UNC2546 exploited multiple zero-day vulnerabilities in Accellion's legacy File Transfer Appliance (FTA) to install a newly discovered web shell named DEWMODE."

16. On February 22, 2021, Accellion published a press release entitled "Mandiant Identifies Criminal Threat Actor and Mode of Attacks." The February 22, 2021 press release attached a link to the initial February 22, 2021 "Threat Research" report issued by Mandiant.

17. Per the Mandiant Report, the following chart reflects the "timeline of relevant events, starting with the first detection of anomalous activity" related to the exploit of FTA in December 2020:

| December Exploit | | | |
|---|---|---|---|
| Exploit | • | Dec. 16, 2020: | First known use of December Exploit: exploit trips FTA's built-in anomaly detector on customer's device |
| Investigation | • | Dec. 16, 2020: | Customer notifies Accellion that its anomaly detector was triggered |
| Investigation | • | Dec. 16-19, 2020: | Accellion investigates and identifies vulnerabilities affecting FTA 9.12.370 – SQL Injection (CVE-2021-27101) and OS Command Execution (CVE-2021-27104) |
| Mitigation | • | Dec. 20, 2020: | Accellion releases patch FTA 9.12.380, which remediates CVE-2021-27101 and CVE-2021-27104 |
| Mitigation | • | Dec. 23, 2020: | Accellion releases patch FTA 9.12.411, increasing anomaly detector checks from one per day to one per hour |

18. The Mandiant Report concludes that the vulnerability in Accellion's FTA was a "zero-day vulnerability." Per Mandiant, a "zero-day vulnerability, at its core, is a flaw" and "an unknown exploit in the wild that exposes a vulnerability in software or hardware and can create complicated problems well before anyone realizes something is wrong." Per Mandiant, a "zero-day exploit leaves NO opportunity for detection ... at first."

19. Unlike Mandiant's definition of a "zero day vulnerability," Accellion knew of a vulnerability in the FTA and the exploitation of that vulnerability on December 16, 2020. Accellion did not, however, immediately report that vulnerability or its exploitation to its customers on December 16, 2020 and thereby denied its customers the opportunity to terminate use of FTA and protect themselves against a breach.

20. Despite knowledge of a vulnerability in the FTA and the exploitation of that vulnerability on December 16, 2020, Accellion did not report that vulnerability or its exploitation to its customers on December 17, 2020 – thereby allowing Accellion's clients to terminate their use of FTA and protect themselves against a breach.

21. Despite knowledge of a vulnerability in the FTA and the exploitation of that vulnerability on December 16, 2020, Accellion did not report that vulnerability or its exploitation to its customers on December 18, 2020 – thereby allowing Accellion's clients to terminate their use of FTA and protect themselves against a breach.

5

22. Despite knowledge of a vulnerability in the FTA and the exploitation of that vulnerability on December 16, 2020, Accellion did not report that vulnerability or its exploitation to its customers on December 19, 2020 – thereby allowing Accellion's clients to terminate their use of FTA and protect themselves against a breach.

23. Accellion purportedly attempted to notify some customers about the vulnerabilities in its FTA for the first time on Sunday, December 20, 2020, at 11:13 a.m. PST. The subject matter of that December 20 email stated "Critical Customer Alert: Urgent FTA security update." The text of the December 20 email stated, in pertinent part: "Accellion has released security software update FTA-9_12_380 with critical, time-sensitive security fixes. We strongly urge you to update your system as soon as possible."

24. Per the Mandiant Report, the following chart reflects the "timeline of relevant events, starting with the first detection of anomalous activity" related to the exploit of FTA in in January 2021:

| | | | |
|---|---|---|---|
| January Exploit | Exploit | Jan. 20, 2021: | First known use of January Exploit (unknown to Accellion at the time) |
| | Exploit | Jan. 22, 2021: | Through multiple customer service inquiries, Accellion learns of anomalous activity indicative of new exploit |
| | Mitigation | Jan. 22, 2021: | Accellion issues critical security alert advising FTA customers to shut down their FTA systems immediately |
| | Mitigation | Jan. 22-25, 2021: | Accellion investigates and identifies Server-Side Request Forgery (CVE-2021-27103) and OS Command Execution (CVE-2021-27102) vulnerabilities |
| | Mitigation | Jan. 25, 2021: | Accellion releases patch FTA 9.12.416, which remediates CVE-2021-27102 and CVE-2021-27103 |
| | Mitigation | Jan. 28, 2021: | Accellion releases patch FTA_9.12.432, increasing frequency of anomaly detector checks to every 10 minutes |

25. On March 1, 2021, Accellion released patches to address two new vulnerabilities found by Mandiant[7].

---

[7] *See* https://www.kiteworks.com/sites/default/files/trust-center/acclleion-fta-attack-mandiant-report-full.pdf (last visited Jan. 18, 2022).

26. During this time, threat actors stole protected health information and other confidential information. Threat actors demanded ransom from Insured in order to prevent the public disclosure of the Insured's confidential information. Insured refused to make any ransom payment, but incurred damages and costs to remediate the breach through its use of third party vendors. As a direct result of the Accellion data breach, Insured incurred approximately $1,066,507.52 in damages.

27. Pursuant to the terms of the subject policy, and an assignment, ASIC is contractually, legally and equitably subrogated, to its insureds' rights against Accellion to recover for the amounts paid as a result of the loss, as well as to pursue any uninsured losses suffered by virtue of an assignment of such claims, if any. ASIC continues to incur losses due to the vulnerabilities in Accellion's systems and failure to timely acknowledge and remedy those vulnerabilities. It seeks to, at a minimum, recover amounts paid on behalf of Insured, but reserves the right to seek reimbursement of all loss incurred by any insureds as a result of any vulnerabilities in Accellion's systems and Accellion's response thereto.

## COUNT I
## (BREACH OF CONTRACT)

28. Plaintiff ASIC incorporates by reference each of its allegations in paragraphs 1 through 27 of its Complaint.

29. On August 23, 2018, Insured entered into the Accellion Solutions License Agreement ("License Agreement") with Accellion. Pursuant to the License Agreement, Insured purchased Accellion's software and Accellion agreed to provide software-related services, maintenance, and support.

30. Under Section 6.1 of the License Agreement, each party obligated to maintain the confidentiality of the other party's information. Under the Confidentiality Provision of the License

Agreement, the parties agreed that, "each Party agrees to **maintain in confidence** and not disclose any Confidential Information acquired directly or indirectly from the other Party." (License Agreement, § 6.1) (emphasis added). As such, Accellion expressly agreed to maintain in confidence and not disclose the confidential information that Accellion acquired directly or indirectly from Insured.

31. Through the use of the FTA software and the transfer of its files, Accellion acquired Insured's confidential information. Threat actors then accessed Insured's confidential information through the exploitation of the FTA software.

32. Accepting these allegations as true, Accellion breached the Confidentiality Provision of the License Agreement by failing to maintain in confidence Insured's confidential information that it acquired from Insured. Accellion failed to maintain such information in confidence as evidenced by the fact that it was accessed by threat actors as a result of the 2021 data breach. Therefore, Accellion breached its contractual obligation to maintain the confidentiality of Insured's information.

33. As a direct result of Accellion's breach of contract, Insured's confidential information, including protected health information, was accessed by threat actors. Insured incurred damages and loss in the amount of approximately $1,066,507.52 as a direct result of Accellion's breach of the Confidentiality Provision of the License Agreement.

WHEREFORE, Plaintiff requests that a judgment be entered against Accellion in an amount in excess of $1,066,507.52, an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## COUNT II
### (NEGLIGENT MISREPRESENTATION)

34. ASIC incorporates by reference each of its allegations in paragraphs 1 through 27

of its Complaint.

35. Absent the License Agreement, Accellion bears a common law duty to exercise reasonable care that its FTA software is secure.

36. Accepting the Insured's allegations as true, Accellion breached its common law duty to exercise reasonable care and thus, is liable for Insured's loss.

37. When offering its FTA software to customers, Accellion represented that its software will be free from any viruses, spyware, trojans, or disabling or malicious code..

38. On January 11, 2021, Accellion issued a press release that stated, "[i]n mid-December, Accellion was made aware of a P0 vulnerability in its legacy File Transfer Appliance (FTA) software." The press release continued, "Accellion resolved the vulnerability and released a patch within 72 hours to the less than 50 customers affected." In reliance of Accellion's statements, Insured continued to use the FTA software to transfer its confidential information and files.

39. Upon information and belief, it was on January 22, 2021 that Accellion first issued a security alert to the Insured that its FTA software may be vulnerable with an instruction to shut down the FTA software.

40. On February 1, 2021, however, Accellion stated that, "[i]n mid-December, Accellion was made aware of a zero-day vulnerability in its legacy FTA software. Accellion released a fix within 72 hours. This incident was the beginning of a concerted cyberattack on the Accellion FTA product that continued into January 2021. Accellion identified additional exploits in the ensuing weeks and rapidly developed and released patches to close each vulnerability. Accellion continues to work closely with FTA customers to mitigate the impact of the attack and

9

to monitor for anomalies[8]."

41. As shown in its February 1, 2021 Security Update, Accellion knew or should have known its representation made on January 11, 2021, which represented that the FTA was secure after the December Exploit, was false. On January 11, 2021, Accellion represented to its customers that its FTA software was secure after Accellion resolved the vulnerability. However, on February 1, 2021, Accellion represented that the December Exploit continued into January 2021 and it identified additional exploits in the "ensuing weeks." Insured reasonably relied on Accellion's representations when Accellion offered its FTA to Insured as well as Accellion's January 11, 2021 representations, which induced the Insured to continue to use its FTA software for its confidential information and files. As a result, the Insured's continued use of the FTA software resulted in harm after its confidential information was stolen by threat actors.

42. As a direct and proximate result of Accellion's representations and Insured's reasonable reliance thereon, Insured incurred damages and loss in the amount of approximately $1,066,507.52.

WHEREFORE, Plaintiff SIC requests that a judgment be entered against Accellion in an amount in excess of $1,066,507.52, an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## COUNT III

## (FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, § 501.204)

43. ASIC incorporates by reference each of its allegations in paragraphs 1 through 42 of its Complaint.

---

[8] *See* https://www.kiteworks.com/company/security-updates/accellion-provides-update-to-recent-fta-security-incident/ (last visited Jan. 18, 2022).

44. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" § 501.204(1), Fla. Stat. (2016).

45. Accellion provided software products to Florida customers thereby engaging in "trade or commerce" as defined in § 501.203(8), Fla. Stat. (2016). Insured constitutes a "consumer" under § 501.203(7), Fla. Stat. (2016).

46. Accellion's deceptive and unfair practices included, but were not limited to: misrepresenting the scope of the data breach; misrepresenting that its FTA software was secure following the December Exploit; and failing to provide adequate security instructions and measures to Accellion customers in order to properly protect their confidential information following the December Exploit.

47. Accellion's actions constitute unfair and deceptive trade practices that are expressly prohibited by § 501.204(1), *et seq*.

48. As a direct and proximate cause of Accellion's unfair and deceptive trade practices, the Insured suffered actual damages in excess of $1,066,507.52. On behalf of the Insured, ASIC is also entitled to its attorneys' fees and costs for having to bring this action for deceptive trade practices under the applicable Florida statute.

WHEREFORE, Plaintiff requests that a judgment be entered against Accellion in an amount in excess of $1,066,507.52, an award of interest, attorney's fees, costs and other damages incurred by Insured, and for such other or further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated:   January 24, 2022

>Respectfully submitted,
>
>**GORDON REES SCULLY MANSUKHANI**
>
>By:   */s/Chantel C. Wonder*
>Chantel C. Wonder
>Florida Bar No.: 0087601
>cwonder@grsm.com
>Miami Tower
>100 SE Second Street, Suite 3900
>Miami, FL 33131
>Tel:  (Direct) 813-523-4945
>*Counsel for Plaintiff*