UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CV-20272-DLG

AIG SPECIALTY INSURANCE COMPANY,

        Plaintiff,
vs.

ACCELLION, INC.,

        Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Complaint (ECF. No. 27).

**THE COURT** has considered the Motion, pertinent portions of the record, and is otherwise fully advised in the premises.

## I.   FACTUAL & PROCEDURAL BACKGROUND

As alleged in the Amended Complaint, Defendant developed and sold a license for a software called File Transfer Appliance ("FTA") to the University of Miami ("the Insured"), which used the software to transfer large files, including files containing confidential information and protected health information. On December 16, 2020, and January 20, 2021, threat actors gained unauthorized access and stole confidential information from Defendant's clients due two vulnerabilities in Defendant's software. Plaintiff, who provided an insurance policy to the Insured, alleges the Insured was affected by the January 2021

breach, and as a result, Plaintiff incurred damages by remediating the effects of the breach and loss of confidential information. Plaintiff further alleges Defendant failed to perform a comprehensive evaluation of the software following the December 16, 2020 breach, which would have revealed the vulnerabilities that led to the January 20, 2021 breach.

On January 24, 2022, Plaintiff filed the instant action, and amended its complaint on March 25, 2022, alleging claims for breach of contract, negligent misrepresentation, and violations of the Florida Deceptive and Unfair Trade Practices Act, § 501.204.

## II. LEGAL STANDARD

### Motions to Dismiss

Allegations within a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The statement need only give the defendant fair notice of what the claim is and the ground upon which it rests." Thomason v. Alabama Home Builders Licensure Bd., 741 F. App'x 638, 641 (11th Cir. 2018) (citing Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)).

"For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider allegations of the complaint as true, and accept all reasonable inferences." Omar ex rel. Cannon v. Lindsey,

334 F.3d 1246, 1247 (11th Cir. 2003) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations and citations omitted). Accordingly, for a claim to have facial plausibility, a Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Therefore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id.

Moreover, the Court's review of a Rule 12(b)(6) motion is ordinarily limited to the face of the complaint and any attachments thereto. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) (citations omitted). Pursuant to Rule 12(d), if a court considers matters presented in a Rule 12(b)(6) motion which are outside of the pleadings, the motion must be converted to a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d). "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." Id. This exception does not extend to external documents which are

merely relevant – but not essential – to the plaintiff's claims. Roberts v. Carnival Corp., 824 F. App'x 825, 826 (11th Cir. 2020).

### III. DISCUSSION

#### A. Plaintiff's Breach of Contract Claim

Defendant argues Plaintiff's breach of contract claim must be dismissed because, pursuant to Defendant's License Agreement with the Insured, the Insured was responsible for maintaining and updating its software. Defendant has filed a copy of the License Agreement. Because Plaintiff has raised a claim for breach of the License Agreement itself, this Court finds that the agreement is necessary and essential to Plaintiff's breach of contract claim and will consider it in determining Defendant's Motion.

Plaintiff's breach of contract claim alleges Defendant breached the confidentiality provision of the License Agreement. Plaintiff argues, the Insured uploaded information to Defendant's software, and the information was accessed by the attackers after it left the Insured's custody, and while it was in the custody of the Defendant by way of the FTA software. Defendant argues it had no actual access to the FTA software or the confidential information contained therein, after it handed the software over to the Insured, and that, in order to access the information, Defendant would have needed to obtain permission from the Insured. Nonetheless, Plaintiff's Amended Complaint does not contend that

Defendant itself had access to the information, but that Defendant had constructive possession of the information through the FTA.

The matter upon which the parties disagree – whether the Defendant had constructive possession of the confidential information transferred through its software – is factual in nature and involves matters best addressed after the parties have conducted discovery. Viewing the Amended Complaint in a light most favorable to the plaintiff, the pleading contains sufficient facts regarding the Defendant's access to the encryption keys and document logs from which the court may draw a reasonable inference that the defendant was in possession of the confidential information.

    A. The Mandiant Report

Defendant makes several arguments for dismissal of Plaintiff's breach of contract claim based on the contents of the "Mandiant Report". Notably, the Amended Complaint refers to the Mandiant Report as evidence that Defendants failed to conduct a comprehensive investigation following the first attack which may have revealed the vulnerabilities leading to the second attack on January 20, 2021. While the report may serve as evidence of the Defendant's conduct and as the basis for Plaintiff' good faith basis for filing the Complaint, the claim would not necessarily fail absent the report because Plaintiff could, in theory, support its claim with other evidence of Defendant's failure to conduct a

thorough investigation following the first attack. See Roberts v. Carnival Corp., 824 F. App'x 825, 827 (11th Cir. 2020)(finding, where matters outside of the pleadings were merely relevant - but not central - to the plaintiff's claims, they should be excluded from the court's consideration on a 12(b)(6) motion).

At this early stage of litigation, the Court will exercise its discretion in excluding the report, in favor of allowing Plaintiff the opportunity to conduct discovery, which may reveal such evidence. See Jones v. Auto. Ins. Co. of Hartford, Conn. 917 F.2d 1528, 1532 (11th Cir.1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court."). Accordingly, the Court will not consider the Mandiant Report in deciding the Defendant's 12(b)(6) motion and rejects Defendant's arguments based thereon.

B. Anti-assignment Clause

Defendant challenges Plaintiff's standing in this cause pursuant to a clause in the License Agreement prohibiting the "assign[ment] of this Agreement without the prior written consent of the other Party". However, as argued in Plaintiff's response, Florida law distinguishes between the assignment of performance due under a contract and the assignment of a claim for damages arising from breach of contract. Charles L. Bowman & Co. v. Erwin, 468 F.2d 1293, 1297 (5th Cir. 1972)("The law draws a distinction ... between

assignment of performance due under a contract and assignment of the right to receive contractual payments."); see also C.P. Motion, Inc. v. Goldblatt, 193 So. 3d 39, 43 (Fla. Dist. Ct. App. 2016)(same); H & J Contracting, Inc. v. Jacobs Eng'g Grp., Inc., No. 15-61462-CIV, 2015 WL 6504543, at *2 (S.D. Fla. Oct. 28, 2015)("a contract provision prohibiting the assignment of rights under a contract does not, without more, prohibit the assignment of a claim for damages on account of a breach of contract," and "dismissal of the breach of contract claim [based thereon] is not appropriate"). Here, Plaintiff is not seeking to enforce performance of the contract, but instead, seeks "damages and loss in the amount of approximately $1,066,507.52 as a direct result of Accellion's breach of the Confidentiality Provision of the License Agreement" [ECF No. 16 at 14]. Accordingly, this Court finds that the anti-assignment clause contained in the License Agreement does not bar the Plaintiff's claims in this matter.

### C. Plaintiff's Negligent Misrepresentation Claims

Plaintiff alleges a claim for negligent misrepresentation in Count II of the Amended Complaint. The elements of a negligent-misrepresentation claim are:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the

representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

SIG, Inc. v. AT & T Digital Life, Inc., 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013)(citing McGee v. JP Morgan Chase Bank, NA, 520 Fed.Appx. 829, 831 (11th Cir.2013)). Further, "because negligent misrepresentation sounds in fraud, the facts surrounding the claim must be pled with particularity," as set forth in Fed. R. Civ. P. 9(b). McGee v. JP Morgan Chase Bank, NA, 520 F. App'x at 831. Rule 9(b) may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997).

Plaintiff alleges Defendants made several misrepresentations giving rise to their claim. First, they allege that on August 23,

2018, when offering its software to the Insured, and again in December of 2020 through its initial reporting, Defendant represented that the FTA software was free from any viruses, spyware, trojans, or disabling or malicious code. However, Plaintiff failed to allege that the software did, in fact, contain any of these particular faults at the time the statements were made. Similarly, Plaintiff claims Defendant made a misrepresentation by stating they "determined that there is a vulnerability that exists," and that "the engineering team has found the issue which has been fixed and tested." Plaintiff alleges this statement constituted a misrepresentation because another breach occurred thereafter. However, Plaintiff has failed to show that Defendant's statement that it identified and remedied the specific breach to which it referred was false. Accordingly, Plaintiff's claims involving these representations must fail. See SIG, Inc. v. AT & T Digital Life, Inc., 971 F. Supp. 2d 1178, 1198 (S.D. Fla. 2013)(dismissing plaintiff's negligent misrepresentation claims where plaintiff did "not even allege how these statements are false," and recognizing that conclusory assertions that the statements were false did not meet the heightened pleading standard of Rule 9(b)).

Next, Plaintiff alleges that "by at least December of 2020," Defendant's software fell below the standard for FIPS 140-2 compliance, but "continued to hold its FTA software out to its

customers as FIPS 140-2 compliant". Plaintiff fails to identify a specific statement made by the Defendants regarding the FIPS 140-2 compliance, fails to identify a specific date on which the alleged misrepresentation was made, and fails to allege how the software was noncompliant. Such vague allegations fall short of the heightened pleading standard set forth in Rule 9(b). Accordingly, Plaintiff's claims involving Defendant's representation that its software was FIPS 140-2 compliant must fail.

Next, Plaintiff alleges Defendant made several misrepresentations after the December 17, 2020 breach by stating they were "doing further investigation on the issue," then later that they "determined that there is a vulnerability that exists which allows unauthorized access," and that "the engineering team has found the issue which has been fixed and tested." Plaintiff alleges these statements were false because the software had "additional vulnerabilities," and opines that the Defendant's development of a newer software indicates that the statements regarding the FTA software were untrue. However, neither the assertion that additional vulnerabilities were later revealed or that a newer software was being developed prove false Defendant's assertions that it investigated an issue with the FTA, identified a vulnerability, and remedied it. Accordingly, Plaintiff has failed to allege a misrepresentation based on these statements.

Next, Plaintiff identifies statements made by the Defendant on December 20, 2020, that the FTA logs did not indicate that the Insured's files were accessed in the first attack and recommending that the Insured re-image the FTA system to "have full confidence there is no remaining backdoor left on the system." Plaintiff's complaint itself states that the Insured's information was accessed "[a]s a result of the January 2021 breach." Moreover, the allegations in the Amended Complaint do not dispute the statement that the Insured's information was not accessed in the first attack. Further, Defendant's statement that re-imaging the system at the time the statement was made "instilled confidence" that there were no remaining vulnerabilities is not proven false by the fact that new vulnerabilities were later revealed.

Finally, Plaintiff alleges Defendant's January 11, 2021 press release stating the vulnerability identified in mid-December was remedied by a patch issued within 72 hours of the attack, constituted a misrepresentation. Plaintiff asserts that this statement was false because it "indicated that Defendant ha[d] performed a full investigation of the vulnerability and investigated the security of the FTA software over the course of several days." However, such conclusions cannot be gleaned from the Defendant's statement which specified that one threat was identified and patched.

Plaintiff has failed to plead negligent misrepresentation as to any of the identified statements with sufficient particularity to meet the Rule 9(b) standard. Count II of the Amended Complaint must, therefore, be dismissed.

### D. Plaintiff's Florida Deceptive and Unfair Trade Practices Act (FDUTPA) Claims

Defendant argues Plaintiff's FDUTPA claim should be dismissed because Plaintiff has failed to allege actual damages, an element of the claim. Indeed, The FDUTPA, which prohibits deceptive and unfair trade practices, only permits the recovery of "actual damages." Tymar Distribution LLC v. Mitchell Grp. USA, LLC, 558 F. Supp. 3d 1275, 1283 (S.D. Fla. 2021); Fla. Stat. Ann. § 501.211.

> Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.

Democratic Republic of the Congo v. Air Cap. Grp., LLC, 614 F. App'x 460, 472 (11th Cir. 2015)(citing Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla.Dist.Ct.App.1984)).

"FDUTPA 'actual damages' do not include consequential damages...." Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc., No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016)(citing Kia Motors America Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008)); see also Midway Labs USA, LLC v. S. Serv. Trading, S.A., No. 19-24857-CIV, 2020 WL 2494608, at *5 (S.D. Fla. May 14, 2020) ("Florida law is clear that consequential damages are barred under the [FDUTPA]").

Plaintiff's Amended Complaint is void of any facts indicating they suffered or seek actual damages resulting from the alleged FDUTPA violations. Plaintiff simply states it "incurred damages to remediate the effects of the breach and loss of confidential information." Such remediation costs constitute consequential, rather than actual, damages and are not recoverable under the FDUTPA. See Thermoset Corp. v. Bldg. Materials Corp. of Am., No. 14-60268-CIV, 2014 WL 11775929, at *6 (S.D. Fla. June 4, 2014) (dismissing FDUTPA claim where plaintiff did "not allege any actual damages within the meaning of FDUTPA, and instead seeks only consequential damages comprising various remediation costs"). Accordingly, Plaintiff's FDUTPA claim must be dismissed.

**CONCLUSION**

It is therefore **ORDERED AND AJUDGED** that Defendant's Motion to Dismiss Plaintiff's Complaint (ECF. No. 27) is hereby **GRANTED IN**

**PART**. Counts II and III of Plaintiff's Amended Complaint are hereby **DISMISSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th day of June, 2022.

s/ Donald L. Graham<br>
DONALD L. GRAHAM<br>
UNITED STATES DISTRICT JUDGE

cc:  All Counsel of Record